1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTOINETTE JOHNSTON,

        Plaintiff,

    v.

MICHAEL J. ASTRUE[1], Commissioner of
Social Security,

        Defendant.

CASE NO.    C06-5580RBL-KLS

REPORT AND
RECOMMENDATION

Noted for May 4, 2007

      Plaintiff, Antoinette Johnston, has brought this matter for judicial review of the denial of her application for disability insurance benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Ronald B. Leighton's review.

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue, who recently became acting Commissioner of Social Security, hereby automatically is substituted for Joanne B. Barnhart.

REPORT AND RECOMMENDATION
Page - 1

1    <u>FACTUAL AND PROCEDURAL HISTORY</u>

2        Plaintiff currently is forty-nine years old.[2] Tr. 33.  She has a high school education and past work

3    experience as an administrative assistant. Tr. 24, 72, 77, 80, 91.

4        On October 31, 2002, plaintiff protectively filed an application for disability insurance benefits,

5    alleging disability as of May 1, 1996, due to a herniated disc in her neck, migraine headaches, back pain,

6    swelling and painful joints, and memory loss and forgetfulness. Tr. 18, 33, 65-67, 71.  Her application was

7    denied initially and on reconsideration. Tr. 33-35, 40.  A hearing was held before an administrative law

8    judge ("ALJ") on February 15, 2005, at which plaintiff, represented by counsel, appeared and testified, as

9    did a vocational expert. Tr. 451-90.

10        On July 1, 2005, a different ALJ issued a decision, determining plaintiff to be not disabled, finding

11    specifically in relevant part:

12        (1)    at step one of the disability evaluation process,[3] plaintiff had not engaged in
                substantial gainful activity since her alleged onset date of disability;

13
        (2)    at step two, plaintiff had "severe" impairments consisting of migraine headaches
14              and fibromyalgia;

15        (3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of
                those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and
16
        (4)    at step four, plaintiff had the residual functional capacity to perform light work,
17              with certain other physical limitations, which did not preclude her from
                performing her past relevant work.
18
    Tr. 25.  Plaintiff's request for review was denied by the Appeals Council on September 11, 2006, making
19
    the ALJ's decision the Commissioner's final decision. Tr. 7; 20 C.F.R. § 404.981.
20
        On October 12, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision.
21
    (Dkt. #1).  Specifically, plaintiff argues that decision should be reversed and remanded for an award of
22
    benefits or, in the alternative, for further administrative proceedings, for the following reasons:
23
        (a)    plaintiff's due process rights were violated by having an unfavorable decision be
24              issued by an ALJ who did not preside at her hearing;

25
26    _____

    [2]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access
27    to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

28    [3]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled.
    See 20 C.F.R. § 404.1520.  If the claimant is found disabled or not disabled at any particular step, the disability determination
    is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION
Page - 2

(b)     the ALJ erred in not finding plaintiff's depression and cervical radiculopathy to be "severe" impairments;

(c)     the ALJ erred in assessing plaintiff's credibility;

(d)     the ALJ erred in evaluating the lay witness evidence in the record;

(e)     the ALJ erred in assessing plaintiff's residual functional capacity; and

(f)     the ALJ erred in finding plaintiff capable of performing her past relevant work.

For the reasons set forth below, the undersigned does not agree that the ALJ erred in determining plaintiff to be not disabled, and thus recommends that the ALJ's decision be affirmed.

<u>DISCUSSION</u>

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

I.     <u>Plaintiff's Date Last Insured</u>

To be entitled to disability insurance benefits, plaintiff "must establish that her disability existed on or before" the date her insured status expired. <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998); <u>see also Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status). Plaintiff's date last insured was December 31, 2000. Tr. 19, 33. Therefore, to be entitled to disability insurance benefits, plaintiff must establish she was disabled prior to or as of that date. <u>Tidwell</u>, 161 F.3d at 601. As discussed below, she has failed to do so.

II.     <u>Plaintiff Has Failed to State a Valid Due Process Claim</u>

Plaintiff argues the Commissioner's regulations were not followed and her due process rights were

violated by the fact that the decision finding her not disabled was issued by an ALJ who did not preside at

the hearing.  To support this argument, plaintiff focuses on language contained in two separate regulations,

20 C.F.R. § 404.950 and 20 C.F.R. § 404.953.  Specifically, plaintiff points out that 20 C.F.R. 404.950(a)

reads in relevant part:

> Any party to a hearing has a right to appear before <u>the administrative law judge</u>, either in person or . . . by video teleconferencing, to present evidence and to state his or her position.

(Emphasis added).  Plaintiff goes on to note that 20 C.F.R. § 404.953(a) in turn states as follows:

> <u>The administrative law judge</u> shall issue a written decision that gives the findings of fact and the reasons for the decision.  The decision must be based on evidence offered at the hearing or otherwise included in the record.

(Emphasis added).

Plaintiff asserts that inclusion of the word "the" before "administrative law judge" in the above two

regulations requires that the ALJ referenced in 20 C.F.R. § 404.950(a), i.e., the one who holds the hearing,

and 20 C.F.R. § 404.953(a), the one who issues the written decision, be the same ALJ.  She argues that this

can be the only logical conclusion when the proper rules of statutory construction, namely that except in

"rare cases," the "plain meaning of legislation should be conclusive," are applied.  <u>See</u> <u>United States v. Ron</u>

<u>Pair Enterprises, Inc.</u>, 489 U.S. 235, 242 (1989).  The undersigned finds no merit in this argument.

It is true as plaintiff asserts that neither regulation uses the terms "an ALJ" or "any ALJ."  This does

not mean, however, that the absence of those terms implies their exclusion.  In other words, use of the term

"the" in this context does not necessarily require that it be interpreted as being inapplicable to more than

one individual, or, in this case, ALJ, whether or not the language of 20 C.F.R. § 404.950(a) and 20 C.F.R. §

404.953(a) are read together.  Rather, plaintiff herself appears to be applying a meaning to the regulatory

language at issue here that simply is not there.  That is, plaintiff, in essence is interpreting the term "the" to

mean "the same."  Looking at the plain meaning of the legislation, nothing in 20 C.F.R. § 404.950(a) or 20

C.F.R. § 404.953(a) indicates that this was the drafters' intent.  Thus, while plaintiff would have the Court

read the regulatory language literally, her interpretation would have the opposite effect.

Accordingly, the undersigned finds that a plain reading of the regulatory language contained in 20

C.F.R. § 404.950(a) and 20 C.F.R. § 404.953(a) does not require that the ALJ who presides at the hearing

be the same ALJ who ultimately issues the written decision.  Plaintiff argues the Commissioner has not

articulated any reasons why the drafters of these regulations would intend to allow an ALJ who has never

met a claimant to write a decision denying her claim.  However, plaintiff has presented no argument why

those same drafters would intend the ALJ referenced in both regulations to be one and the same, when, as

explained above, a plain reading of those regulations does not demonstrate that intent.  The Commissioner

should not be required to defend against something that simply is not there.

Plaintiff also points to language contained in the Commissioner's Hearing, Appeals and Litigation

Law Manual ("HALLEX") to support her position.  As plaintiff admits, the HALLEX, unlike the Code of

Federal Regulations, "is strictly an internal guidance tool, providing policy and procedural guidelines to

ALJs and other staff members," and, "[a]s such, it does not prescribe substantive rules and therefore does

not carry the force and effect of law." Moore v. Apfel, 216 F.3d 864, 868-69 (9th Cir. 2000).  Accordingly,

the HALLEX is not binding on this Court.  Even were the undersigned inclined to look to the HALLEX for

insight into the Commissioner's interpretation of the regulatory language at issue here as plaintiff suggests,

that portion of the HALLEX to which plaintiff cites does not particularly help her:

> When an ALJ who conducted a hearing in a case is not available to issue the
> decision because of death, retirement, resignation, or illness … the Hearing
> Office Chief ALJ will reassign the case to another ALJ. The ALJ to whom the
> case is reassigned will review the record and determine whether or not another
> hearing is required to issue a decision. The ALJ's review will include all of the
> evidence of record, including the audio recording of the hearing.
>
> •  If the ALJ is prepared to issue a fully favorable decision, another hearing would
>    not be necessary.
>
> •  If the ALJ is prepared to issue a less than fully favorable decision, another
>    hearing may be necessary.  For example, another hearing would be necessary if .
>    . . the claimant alleges disabling pain, and the ALJ believes the claimant's
>    credibility and demeanor could be a significant factor in deciding the case.

HALLEX 1-2-8-40, Plaintiff's Opening Brief, pp. 14-15.

First, the above HALLEX language does not prohibit the reassignment of a case to a different ALJ

without notice or explanation.  While that language does state that the Hearing Office Chief ALJ will

reassign a case due to death, retirement, resignation, or illness, it does not indicate that these situations

constitute the only instances when such reassignment shall be made.  In other words, it is not clear that this

is an exclusive list of circumstances, and as such, it does not direct that reassignment of an ALJ should be

allowed only when absolutely necessary.  As the list is not demonstrably exclusive, it does not appear to be

a violation of the HALLEX for plaintiff's case to have been reassigned, even though there may be no

1   evidence in the record that the first ALJ died, resigned, retired, or became ill.

2           The HALLEX language cited to by plaintiff, furthermore, merely goes on to state that if the ALJ to

3   whom the matter is reassigned is prepared to issue a less than fully favorable decision, then a new hearing

4   <u>may</u> be necessary.  This language, therefore, is entirely permissive.  In addition, while the HALLEX may

5   indicate a hearing would be necessary where the claimant's credibility <u>and</u> demeanor could be a significant

6   factor in deciding the case, in this case, while the ALJ who wrote the decision did not find plaintiff to be

7   fully credible, there appears to be no issue concerning her demeanor at the hearing.  Regardless, in light of

8   the non-binding nature of the HALLEX, the undersigned finds no error by the Commissioner here.  Indeed,

9   given that, as discussed above, the actual regulatory language plainly does not require what plaintiff argues

10  it does, resort to the HALLEX as an interpretative tool would be improper.

11          As for plaintiff's due process violation claim, the undersigned finds that to be without merit as well.

12  "[D]ue process requires that a claimant receive meaningful notice and an opportunity to be heard before his

13  claim for disability benefits may be denied."  <u>Udd v. Massanari</u>, 245 F.3d 1096, 1099 (9th Cir. 2001) (citing

14  <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976)).  In this case, plaintiff received all the process due to her.

15  There is no argument that she did not get notice of the hearing or that she was denied the opportunity to

16  appear and be heard at the hearing, present evidence in support of her disability claim and make arguments

17  with respect thereto.  Plaintiff may argue that the violation occurred when an ALJ who did not preside at

18  her hearing issued the written decision.  However, she has provided no persuasive explanation as to how

19  this adversely impacted her ability to appear and be heard,[4] and has presented no legal authority showing

20  that this comprises a constitutional right applicable to her.

21  III.    <u>The ALJ's Step Two Determination Was Proper</u>

22          At step two of the sequential disability evaluation process, the ALJ must determine if an impairment

23  is "severe."  20 C.F.R. § 404.1520.  An impairment is "not severe" if it does not "significantly limit" a

24  claimant's mental or physical abilities to do basic work activities.  20 C.F.R. § 404.1520(a)(4)(iii), (c); Social

25  ────────────────

26          [4]Plaintiff does hint at a possible explanation, arguing, as noted previously, that the Commissioner failed to articulate any
    reasons why the drafters of the regulatory language would allow an ALJ who has never seen a claimant to write a decision denying
27  the claimant's claim.  In so arguing, plaintiff also impliedly may have been asserting that the inability to appear personally before
    the ALJ who issues the decision is fundamentally unfair, and thus constitutes a due process violation.  However, as discussed
28  above, plaintiff's demeanor was not at issue in this case.  Further, the ALJ obviously had the benefit of the hearing tape and/or
    transcript, as the decision referenced the hearing testimony, thus was presented with all of the evidence provided by plaintiff.
    In any event, as discussed herein, plaintiff has failed to show that she has a constitutional right to appear personally before the
    ALJ who ultimately ends up being responsible for writing the actual decision.

REPORT AND RECOMMENDATION
Page - 6

1   Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and

2   aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

3        An impairment is not severe only if the evidence establishes a slight abnormality that has "no more

4   than a minimal effect on an individual[']s ability to work."  See SSR 85-28, 1985 WL 56856 *3; Smolen v.

5   Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff

6   has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work

7   activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599,

8   601 (9th Cir. 1998).  The step two inquiry described above, however, is a de minimis screening device used

9   to dispose of groundless claims.  Smolen, 80 F.3d at 1290.

10       Here, the ALJ found that plaintiff's migraine headaches and fibromyalgia were severe, but that she

11  had no other severe impairments. Tr. 19.  Plaintiff argues the ALJ erred in not finding her depression and

12  cervical radiculopathy to be severe as well.  The undersigned disagrees.  First, with respect to her alleged

13  depression, the record contains no objective medical evidence that such a condition more than minimally

14  affected her ability to work prior to her date last insured.  Plaintiff points to one medical diagnostic record

15  indicating she was hospitalized in early March 2001, three months after her date last insured passed, for

16  problems with pain and major depression. Tr. 141.  She asserts that while this medical record post-dated her

17  date last insured, her depression "did not pop up overnight like mushrooms." Plaintiff's Opening Brief, p.

18  16.  Plaintiff also states that she was noted to have depression by her treating physician and that progress in

19  her physical therapy was hampered in part because of "emotional" stress prior to the expiration of her

20  insured status. See Tr. 129, 248, 273.

21       It is apparent from this evidence, plaintiff argues, that psychological factors were a major factor in

22  her disability.  First, as plaintiff herself has pointed out, the diagnosis of major depression made in early

23  March 2001, was provided after her date last insured.  While plaintiff may sincerely believe, and, indeed, it

24  may even be true, that depression does not just "pop up overnight like mushrooms," that statement does not

25  constitute an opinion from a medical source, acceptable or otherwise, of which the Court may take notice.

26  In other words, the Court should not act as its own medical expert, or substitute its lay opinion for that of

27  those who are qualified to make an expert medical opinion, by adopting it, and the undersigned declines to

28  do so here.  Regardless, while major depression may have many causes and factors, it is conceivable that it

    does have a beginning point, and it is not at all far-fetched to believe that any depression plaintiff may have

REPORT AND RECOMMENDATION

suffered from did not become "major" until after her date last insured.

In any event, even if the undersigned were to agree with plaintiff, the only thing that notation in the medical record shows is that plaintiff had major depression prior to her date last insured. No opinion was provided with respect to any functional limitations stemming therefrom that had or would have more than a minimal effect on plaintiff's ability to do basic work activities during the relevant time period at issue here. In other words, to demonstrate that an impairment, mental or physical, is severe, a claimant must do more than merely show that he or she has that impairment. Plaintiff has not done so here.

The other evidence plaintiff points to regarding her alleged depression is equally unpersuasive. For example, although the two other specific references to plaintiff having depression noted above were dated prior to her date last insured, it is not at all clear that these were made by a treating physician, as opposed to some other type of treatment provider. See Tr. 248, 273. Again, regardless of the source of these notations, mere mention of a condition does not in itself mean it is a severe impairment as contemplated by the Social Security Regulations. In addition, the physical therapy progress note to which plaintiff also refers merely stated that her "progress was highly correlative to her expressions of stress in her relationship with her 21 year old son." Tr. 129. There is no evidence that this constitutes "emotional" stress as so described by plaintiff, that such stress at all amounts to a finding of depression, or that any hindrance it caused in her physical therapy progress also would cause restrictions with respect to work.

Plaintiff's argument in regard to her cervical radiculopathy is equally flawed. Once more, plaintiff merely points to medical evidence in the record that she had left-sided neck and radicular pain prior to her date last insured. See, e.g. Tr. 138, 254-59, 321, 364, 376. Again, however, plaintiff must do more than just point out that she has been diagnosed as having pain. Rather, she must show that her pain had at least some greater than minimal impact on her ability to work. The objective medical evidence in the record simply does not support such a finding for the period prior to (see,e.g. Tr. 134, 136-37, 139, 202, 363, 365, 368-70, 376-77), and, indeed, to a large extent, after (see, e.g. Tr. 142, 144, 146, 158, 164-65, 178-80, 182-83, 185-88, 192-93, 201, 396, 417-18) plaintiff's date last insured. Plaintiff also points to her testimony in the record that she continued to work at her past job despite her pain, until it worsened to the extent that she could no longer sustain a schedule. Tr. 479-80. While a claimant's pain and other symptoms must be considered in determining whether a severe impairment exists, as discussed below, the ALJ did not

1    err in discounting plaintiff's credibility in this case. <u>See</u> 20 C.F.R. § 404.1529.

2    IV.      <u>The ALJ Properly Assessed Plaintiff's Credibility</u>

3            Questions of credibility are solely within the control of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d

4    639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. <u>Allen</u>, 749

5    F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is

6    based on contradictory or ambiguous evidence. <u>Id.</u> at 579. That some of the reasons for discrediting a

7    claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long

8    as that determination is supported by substantial evidence. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th

9    Cir. 2001).

10           To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the

11   disbelief." <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify

12   what testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>; <u>Dodrill v.</u>

13   <u>Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering,

14   the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." <u>Lester</u>, 81 F.2d at

15   834. The evidence as a whole must support a finding of malingering. <u>O'Donnell v. Barnhart</u>, 318 F.3d 811,

16   818 (8th Cir. 2003).

17           In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

18   evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

19   testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ

20   also may consider a claimant's work record and observations of physicians and other third parties regarding

21   the nature, onset, duration, and frequency of symptoms. <u>Id.</u>

22           Plaintiff argues that the ALJ's generalized finding that her "statements concerning her impairments

23   and their impact on her ability to work are not entirely credible, in light of information contained in the

24   medical reports and elsewhere in the record," lacked the specificity required to discount her credibility. Tr.

25   20. Were this merely what the ALJ found, plaintiff would be correct. The ALJ, however, did provide far

26   more specific, and, as explained below, legitimate, reasons for discounting her credibility. Defendant too

27   has noted the other, more focused reasons provided by the ALJ. <u>See</u> Tr. 20-22. Plaintiff dismisses this by

28   claiming defendant merely has cited to scattered portions of the record in an attempt to provide support for

finding an adverse credibility determination.  While the ALJ certainly may not have provided as succinct a credibility determination certainly as he could have, he did in fact provide a valid one.

First, the ALJ noted plaintiff's migraines and fibromyalgia improved on medication, despite her allegation that her inability to work in part was due to those impairments. Tr. 20-21.  Medical improvement is a valid basis upon which to discount a claimant's credibility. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The ALJ further noted that plaintiff continued to work during the relevant time period, despite the allegedly disabling pain symptoms she experienced as a result of her headaches. Tr. 20.  Certainly, this inconsistency does not bear well on plaintiff's credibility.

The ALJ also noted the activities in which plaintiff continued to engage, including participating in yoga classes, driving to do local errands and performing household chores, and going on trips, including a trip to Hawaii and a snorkling vacation in Florida. Tr 20, 22.  To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284.  Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7.  Even if, as stated by the ALJ, not all of the above activities took place prior to plaintiff's date last insured or are all translatable to a work setting, at the very least they show she is not nearly as functionally limited as she has alleged, as also shown by the work plaintiff did and noted by the ALJ:

> The claimant's reported work from August to October 2000 is noted.  The claimant said that she worked at a golf pro shop from August to October 2004, 5 hours per day, 5 days a week; she took reservations and did some sales.  She said that she "called in" or left early about 6 times during the course of her employment.  There is no evidence to support that allegation.  Regardless, this was not substantial gainful activity.  Although her work activity is not found to be disqualifying substantial gainful activity, it is given some consideration in assessing her residual functional capacity and her general credibility overall.  Certainly, her activity at the pro shop refutes her allegation that she can not stand for more than one hour, sit for 30 minutes, and walk 20 minutes.

Tr. 22.  This is an additional reason that supports the ALJ's credibility determination.

The ALJ noted as well that the disabling symptoms plaintiff alleges resulted from her depression, migraines, fibromyalgia and other impairments, are not consistent with the weight of the medical evidence in the record concerning her condition prior to her date last insured. Tr. 20-22.  While an ALJ cannot reject a claimant's pain testimony solely on the basis of a lack of objective medical evidence in the record, the

1  determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear

2  and convincing requirement.  See Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995); Regennitter v.

3  Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  Plaintiff has failed to show that the medical

4  evidence in the record supports her allegations of disabling impairments, including her claimed depression

5  and cervical radiculopathy discussed above, during the relevant time period.

6      Lastly, plaintiff again takes issue with the fact that the ALJ who issued the decision in this case was

7  not the ALJ who presided at the hearing.  As such, plaintiff asserts the ALJ had no independent basis for

8  providing an opinion as to her credibility, and thus that opinion should not be accorded its usual deference,

9  because he never met, saw or spoke to her, and did not observe her at the hearing.  Certainly, an ALJ may

10  rely on a claimant's demeanor at the hearing as a basis for discrediting his or her testimony.  Thomas v.

11  Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).  The

12  ALJ, however, may not reject a claimant's subjective complaints "solely on the basis of" his own personal

13  observations. SSR 95-5p, 1995 WL 670415 *2.  In other words, and as demonstrated above, demeanor is

14  only one means for evaluating a claimant's credibility.  Further, the fact that it cannot be the sole basis for

15  discrediting testimony, also indicates that neither is it a perquisite for doing so.

16  V.      The ALJ Did Not Err in Evaluating the Lay Witness Evidence in the Record

17      Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into

18  account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to

19  each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001).  An ALJ may discount lay

20  testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.

21  1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  In rejecting

22  lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for

23  dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those

24  reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512.  The ALJ also may

25  "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

26      As she did with respect to the ALJ's assessment of her own credibility, plaintiff argues the ALJ also

27  erred in evaluating the lay witness evidence in the record in that while he did mention that evidence, he then

28  merely stated he was incorporating their observations into his determination only so far as they were

REPORT AND RECOMMENDATION
Page - 11

1   "supported by objective clinical findings in the record." Tr. 23.  Once more, this is a clear misstatement of

2   what the ALJ actually found here.  That is, as explained below, after providing a summary of the evidence

3   from each lay witness, the ALJ then gave germane reasons for discounting that evidence. Tr. 22-23.  As

4   such, the undersigned finds the ALJ did not err here.

5          Thus, for example, the ALJ noted that while plaintiff's husband, Robert Johnston, corroborated her

6   testimony regarding her migraine headaches, and that plaintiff had testified that she had them four to five

7   times per week, the evidence shows the number of times she has those headaches has declined significantly

8   over time and suggests they have not been as limiting as alleged. Tr. 23.  The ALJ also pointed out that Mr.

9   Johnston's testimony concerning plaintiff's difficulties with concentration and memory were not consistent

10  with the evidence in the record concerning the activities she engaged in. Id.

11         The ALJ further noted that while plaintiff's friend, Cheryl Erickson, reported plaintiff had trouble

12  with her hand grip and needed to elevate her legs on occasion, the medical evidence in the record failed to

13  reveal any significant problems with hand grip or the need for leg elevation. Tr. 23.  As noted above, such

14  inconsistency with the objective medical evidence in the record constitutes a germane reason for rejecting

15  lay witness testimony.  Similarly, the ALJ found the statement of another friend, Ashley Wagoner, to the

16  effect that plaintiff "could barely walk" on occasions, was not at all borne out by, or even mentioned in, the

17  objective medical evidence in the record. Id.

18  VI.    The ALJ Properly Assessed Plaintiff's Residual Functional Capacity

19         If a disability determination "cannot be made on the basis of medical factors alone at step three of

20  the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and

21  assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A

22  claimant's residual functional capacity assessment is used at step four to determine whether he or she can do

23  his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  It thus

24  is what the claimant "can still do despite his or her limitations." Id.

25         A claimant's residual functional capacity is the maximum amount of work the claimant is able to

26  perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work

27  must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those

28  limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a

claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the residual functional capacity to perform light work, with the additional limitations that she could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and that she could not climb ropes, ladders and scaffolds. Tr. 24-25.  Plaintiff argues this assessment did not include all of the limitations caused by her chronic cervical pain and radiculopathy or depression, nor did it include her need to lie down for an hour at a time or call in sick on days that she has migraines.  These limitations, plaintiff states, are based on her own testimony and the observations of her husband and friends.  Indeed, she has pointed to no objective medical evidence in the record to support those limitations.  As discussed above, the ALJ did not err either in discounting plaintiff's credibility or the statements of her husband and friends.  As such, the ALJ was not required to adopt these further limitations in his assessment of plaintiff's residual functional capacity.

VII.`   The ALJ's Step Four Analsysis

Plaintiff has the burden at step four of the disability evaluation process to show that she is unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  She has failed to do so here.  At the hearing, the ALJ posed a hypothetical question to the vocational expert that included the same limitations as were contained in the ALJ's assessment of plaintiff's residual functional capacity. Tr. 487-88.  In response to that question, the vocational expert testified that plaintiff could perform her past relevant work. Tr. 488.  Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of returning to her past relevant work, and thus to be not disabled at step four of the sequential disability evaluation process. Tr. 24.

Plaintiff argues that her testimony and the statements of the lay witnesses in the record showed she experienced intermittent pain that was so severe at times that it precluded all activity for several hours, and that the vocational expert testified that an individual with such a limitation would not be able to sustain any work.  Again, however, because this limitation is, as plaintiff admits, based solely on her own testimony and the statements of her husband and friends, and because the ALJ properly discredited her testimony and their statements, the ALJ was not required to adopt that limitation or any testimony provided by the vocational

REPORT AND RECOMMENDATION
Page - 13

1  expert based on that limitation.  As with the other limitations plaintiff sought to have added to her residual

2  functional capacity assessment, no objective medical evidence in the record supports this limitation.  The

3  ALJ's step four analysis, therefore, was proper as well.

4  VIII.   Plaintiff's Argument Concerning Her Onset Date of Disability

5          Plaintiff argues that the ALJ admitted uncertainty as to the onset date of her symptoms, and thus, in

6  the event this matter is remanded for further administrative proceedings, the ALJ should be required to call

7  a medical expert to testify so as to infer an appropriate onset date of disability pursuant to SSR 83-20, 1983

8  WL 31249.  Although, as discussed above, this matter should not be remanded for further proceedings, but

9  should be affirmed instead, the undersigned is addressing this issue solely to the extent that plaintiff also is

10 challenging the ALJ's evaluation of the objective medical evidence in the record concerning the onset date

11 of her symptoms in general.

12         Plaintiff's reliance on SSR 83-20 is misplaced.  That ruling sets forth the Commissioner's policy

13 when establishing a claimant's onset date of disability.  That ruling comes into play, however, only after the

14 claimant has met the "ultimate burden" of proving disability prior to the expiration of his or her insured

15 status. Armstrong v. Commissioner of the Social Security Administration, 160 F.3d 587, 590 (9th Cir.

16 1998).  In other words, it is only when the claimant has established disability and the "record is ambiguous

17 as to the onset date of disability," does SSR 83-20 require the ALJ to "assist the claimant in creating a

18 complete record" that "forms a basis for" establishing a disability onset date, by, for example, obtaining the

19 testimony of a medical expert. Id.  As disability has not been established here, the requirements of SSR 83-

20 20 are not applicable to this case.

21                                          CONCLUSION

22         Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was

23 not disabled, and should affirm the ALJ's decision.

24         Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),

25 the parties shall have ten (10) days from service of this Report and Recommendation to file written

26 objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

27 objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit

28 imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **May 4, 2007**, as

REPORT AND RECOMMENDATION
Page - 14

1   noted in the caption.

2       DATED this 9th day of April, 2007.

3

4

5                                           Karen L. Strombom
                                            United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 15